UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

SHIVA STEIN,                                     :

                 Plaintiff,                  :   Case No. 1:22-cv-1914

v.                                         :

                                          :   **COMPLAINT FOR VIOLATIONS OF**

HOUGHTON MIFFLIN HARCOURT      :   **SECTIONS 14(e), 14(d) AND 20(a) OF**

COMPANY, JOHN J. LYNCH, JR.,        :   **THE SECURITIES EXCHANGE ACT**

LAWRENCE K. FISH, JEAN-CLAUDE     :   **OF 1934**

BRIZARD, L. GORDON CROVITZ, JEAN S.   :

DESRAVINES, JILL A. GREENTHAL,      :   **JURY TRIAL DEMANDED**

JOHN F. KILLIAN, JOHN R. MCKERNAN,   :

JR., and TRACEY D. WEBER,           :

                                          :

                 Defendants.              :

------------------------------------------------------------   :

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.       This is an action brought by Plaintiff against Houghton Mifflin Harcourt Company ("Houghton Mifflin or the "Company") and the members Houghton Mifflin board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Houghton Mifflin by affiliates of Veritas Capital Fund VII, L.P. ("Veritas").

2.       Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Solicitation Statement on Schedule 14D-9 (the "Solicitation Statement") to be filed on March 7, 2022 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders.  The Solicitation Statement recommends that Company stockholders tender their shares in support of a proposed transaction whereby Harbor Purchaser Inc. ("Merger Sub"), a wholly owned subsidiary of Harbor Holding Corp. ("Parent"), will merge with and into Houghton Mifflin, with Houghton Mifflin continuing as the surviving corporation and become a wholly-owned subsidiary of Parent (the "Proposed Transaction").  Merger Sub and Parent are both affiliates of Veritas.  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into, dated February 21, 2022 (the "Merger Agreement"), each Houghton Mifflin common share issued and outstanding will be converted into the right to receive: $21.00 in cash (the "Merger Consideration"). In accordance with the Merger Agreement, Merger Sub commenced a tender offer to acquire all of Houghton Mifflin's outstanding common stock and will expire on April 1, 2022 (the "Tender Offer").

3.      Defendants have now asked Houghton Mifflin's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Solicitation Statement, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.  Specifically, the Solicitation Statement contains materially incomplete and misleading information concerning, among other things, (i) Houghton Mifflin's financial projections relied upon by the Company's financial advisor, Evercore Group L.L.C. ("Evercore") in its financial analyses; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by the financial advisors. The failure to adequately disclose such material information constitutes a violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act as Houghton Mifflin stockholders need such information in order to tender their shares in support of the Proposed Transaction.

4.      It is imperative that the material information that has been omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the expiration of the tender offer.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Houghton Mifflin's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14(d), and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because each is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Company trades on the NASDAQ Stock Exchange, headquartered in this District, and because Parent and Veritas are both headquartered in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Houghton Mifflin common stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual John J. Lynch has served as a member of the Board since 2017 and is also the Company's President and Chief Executive Officer.

11.     Individual Defendant Lawrence K. Fish has served as a member of the Board since 2011 and is the Chairman of the Board.

12.     Individual Defendant Jean-Claude Brizard has served as a member of the Board since 2021.

13.     Individual Defendant L. Gordon Crovitz has served as a member of the Board since 2012.

14.     Individual Defendant Jean S. Desravines has been a member of the Board since 2018.

15.     Individual Defendant Jill A. Greenthal has served as a member of the Board since 2012.

16.     Individual Defendant John F. Killian has served as member of the Board since 2011.

17.     Individual Defendant John R. McKernan, Jr. has served as a member of the Board since 2012.

18.     Individual Defendant Tracey D. Weber has served as a member of the Board since 2016.

19.     Defendant Houghton Mifflin is incorporated in Delaware and maintains its principal offices at 125 High Street, Boston, Massachusetts 02110.  The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "HMHC."

20.     The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21.     The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

SUBSTANTIVE ALLEGATIONS

A.     **The Proposed Transaction**

22.     Houghton Mifflin, a learning technology company, provides curriculum, supplemental, intervention solutions, and professional learning services worldwide. It offers education programs in disciplines including reading, literature, math, science, and social studies; and extensions, such as supplemental and intervention solutions, professional services, professional resources, and educational services for teachers under the Heinemann brand. The company was formerly known as HMH Holdings (Delaware), Inc. and changed its name to Houghton Mifflin Harcourt Company in October 2013. Houghton Mifflin was founded in 1832 and is headquartered in Boston, Massachusetts.

23.     On February 22, 2022, Houghton Mifflin announced the Proposed Transaction:

> **BOSTON** — Houghton Mifflin Harcourt Company (Nasdaq: HMHC) ("HMH," or the "Company"), a learning technology company, today announced that it has entered into a definitive merger agreement with certain affiliates of Veritas Capital ("Veritas"), a leading private investment firm, for the acquisition of the Company.
>
> Pursuant to the terms of the agreement, HMH shareholders will be entitled to receive $21 in cash per share through a tender offer. The per share purchase price represents a 36% premium to the Company's unaffected share price as of January 13, 2022 and implies an equity value of approximately $2.8 billion.
>
> The decision to enter into an agreement with Veritas was the result of a deliberate and thorough strategic review process overseen by HMH's Board of Directors. As part of that review, the Company held discussions with several potential strategic and financial bidders, including Veritas, through a formal process. Further details of the transaction and background of the sale process will be

included in the Company's Schedule 14D-9 with respect to the tender offer.

"Partnering with Veritas will provide HMH with the opportunity to accelerate our momentum and increase our impact on the four million teachers and 50 million students that we support each day. With accelerating billings growth, strong free cash flow and a transformed cost structure, we are at an important inflection point, and the time is right to move into the next phase of our long-term growth strategy alongside a partner that brings significant industry expertise," said Jack Lynch, President and Chief Executive Officer of HMH, who will continue to lead the Company along with the current management team. "As the promise of digital learning increasingly takes hold across the nation, we are confident this transaction will deepen our ability to bring the power of learning to even more teachers and their students, invest in our purpose-driven team, and have a positive impact on the communities we serve."

"We recognize HMH as one of the storied brands in education and are excited to partner with the company to expand its market-leading digital solutions and deliver the most efficacious products to students and teachers," said Ramzi Musallam, Chief Executive Officer and Managing Partner of Veritas. "Over Veritas' two decades of investing, education and technology have both become critical areas of focus across our portfolio. We look forward to bringing to bear our deep experience in K-12 education and proven track record to meaningfully invest in the Company to help drive better outcomes for students across the nation."

The agreement was unanimously approved by HMH's Board of Directors. The transaction is expected to be completed in the second quarter of 2022, subject to receipt of requisite regulatory approvals and satisfaction of customary closing conditions.

Evercore served as financial advisor, and WilmerHale served as legal counsel to HMH. Milbank LLP acted as legal advisor to Veritas. Bank of America, JPMorgan Chase Bank, N.A., Deutsche Bank and Macquarie Capital are providing committed financing for the proposed transaction.

* * *

24.      It is therefore imperative that Houghton Mifflin's stockholders are provided with

the material information that has been omitted from the Solicitation Statement, so that they can

meaningfully assess whether or not the Proposed Transaction is in their best interests.

**B.       The Materially Incomplete and Misleading Solicitation Statement**

25.      On March 7, 2022, Houghton Mifflin filed the Solicitation Statement with the SEC

in connection with the Proposed Transaction.  The Solicitation Statement was furnished to the

Company's stockholders and solicits the stockholders to tender their shares in support of the

Proposed Transaction.   The Individual Defendants were obligated to carefully review the

Solicitation Statement before it was filed with the SEC and disseminated to the Company's

stockholders to ensure that it did not contain any material misrepresentations or omissions.

However, the Solicitation Statement misrepresents and/or omits material information that is

necessary for the Company's stockholders to make an informed decision concerning whether to

tender their shares, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Company Financial Projections*

26.      The Solicitation Statement fails to provide material information concerning

financial projections by Houghton Mifflin management and relied upon by the financial advisors

in their analyses. The Solicitation Statement discloses management-prepared financial projections

for the Company which are materially misleading. The Solicitation Statement indicates that in

connection with the rendering of its fairness opinion, that the Company prepared certain non-

public financial forecasts (the "Projections") and provided them to the Board and the financial

advisors with forming a view about the stand-alone valuation of the Company.  Accordingly, the

Solicitation Statement should have, but fails to provide, certain information in the projections that

Houghton Mifflin management provided to the Board and the financial advisors. Courts have

uniformly stated that "projections … are probably among the most highly-prized disclosures by

investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27.     For the Projections prepared by Company management for Houghton Mifflin for fiscal years 2022 through 2026, the Solicitation Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: (a) Adjusted EBITDA; (b) Adjusted EBITDA Less Plate CapEx; (c) Adjusted EBITDA Less Total CapEx, and (d) Unlevered Free Cash Flows, but fails to disclose: (i) the line items used to calculate the non-GAAP measures or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G.

28.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the

residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

30. Thus, to cure the Solicitation Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Solicitation Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Solicitation Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Evercore's Financial Analyses*

31. With respect to Evercore's *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the estimated terminal values for the; (ii) the inputs and assumptions underlying the use of perpetuity growth rates ranging from 3.0% to 4.0%; (iii) the tax assets of the Company; (iv) the inputs and assumptions underlying the use of discount rates ranging from 11.50% to 13.50%; (v) Houghton Mifflin's weighted average cost of capital; (vi) the Company's estimated net debt as of March 31, 2022; and (vii) the number of fully diluted shares of Company stock.

32. With respect to Evercore's *Selected Public Company Trading Analysis*, the Solicitation Statement fails to disclose the metrics and multiples of each company observed by Evercore in the analysis.

33. With respect to Evercore's *Selected Transactions Analysis*, the Solicitation Statement fails to disclose the metrics and multiples of each transaction observed by Evercore in the analysis.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

34.     With respect to Evercore's *Equity Research Analyst Price Targets* analysis, the Solicitation Statement fails to disclose the equity research analysts observed and the analysts' published price targets of the common stock of the Company.

35.     With respect to Evercore's *Premiums Paid Analysis*, the Solicitation Statement fails to disclose the transactions observed by Evercore in the analysis, and the premiums paid in those transactions.

36.     In sum, the omission of the above-referenced information renders statements in the Solicitation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff will be unable to make a fully-informed decision regarding whether to tender his shares, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for**
**Violations of Section 14(e) of the Exchange Act**

37.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . ." 15 U.S.C. § 78n(e).

39.     Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which

they are made, not misleading, in conjunction with the Tender Offer. Defendants knew or recklessly disregarded that the Solicitation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

40.     The Solicitation Statement was prepared, reviewed and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, the Company's financial projections, and the financial advisor's valuation analyses and resultant fairness opinion.

41.     In so doing, Defendants made untrue statements of material fact and omitted material information necessary to make the statements that were made not misleading in violation of Section 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Solicitation Statement, Defendants were aware of this information and their obligation to disclose this information in the Solicitation Statement.

42.     The omissions and misleading statements in the Solicitation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the Solicitation Statement as altering the "total mix" of information made available to stockholders.

43.     Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the

Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain

portions of the Solicitation Statement materially incomplete and therefore misleading.

44.     The misrepresentations and omissions in the Solicitation Statement are material to

Plaintiff, and Plaintiff will be deprived of his entitlement to make a fully informed decision if such

misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

<u>**COUNT II**</u>
**Violations of Section 14(d)(4) of the Exchange Act and**
**Rule 14d-9 Promulgated Thereunder**
**(Against All Defendants)**

45.     Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth

herein.

46.     Defendants have caused the Solicitation Statement to be issued with the intention

of soliciting stockholder support of the Tender Offer.

47.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder

require full and complete disclosure in connection with tender offers.

48.     The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it

omits material facts, including those set forth above, which render the Solicitation Statement false

and/or misleading.

49.     Defendants knowingly, or with deliberate recklessness, omitted the material

information identified above from the Solicitation Statement, causing certain statements therein to

be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had

access to and/or reviewed the omitted material information in connection with approving the

Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain

portions of the Solicitation Statement materially incomplete and therefore misleading.

50.     The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

## COUNT III

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

51.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52.     The Individual Defendants acted as controlling persons of Houghton Mifflin within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Houghton Mifflin, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Houghton Mifflin, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

53.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Houghton Mifflin, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was

reviewed by the Board prior to voting on the Proposed Transaction.  The Solicitation Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Solicitation Statement.

55.     In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Solicitation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

56.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) and (e), by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

58.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with,

consummating, or closing the Proposed Transaction, unless and until Defendants disclose the

material information identified above which has been omitted from the Solicitation Statement;

A.      Rescinding, to the extent already implemented, the Merger Agreement or any of

the terms thereof, or granting Plaintiff rescissory damages;

B.      Directing the Defendants to account to Plaintiff for all damages suffered as a result

of their wrongdoing;

C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable

attorneys' and expert fees and expenses; and

D.      Granting such other and further equitable relief as this Court may deem just and

proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

DATED: March 7, 2022                                **MELWANI & CHAN LLP**

                                                    /s *Gloria Kui Melwani*
                                                    Gloria Kui Melwani (GM5661)
                                                    1180 Avenue of the Americas
                                                    New York, New York 10036
                                                    Tel: (212) 382-4620
                                                    Email: gloria@melwanichan.com

                                                    *Attorneys for Plaintiff*